# DISSENTING OPINION TO DENIAL OF EN BANC CONSIDERATION

Nos. 04-09-00204-CR & 04-09-00205-CR

John David **MARTINEZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law of Val Verde County, Texas
Trial Court Nos. 07-570-CR & 07-571-CR
Honorable Sergio J. Gonzalez, Judge Presiding

Opinion Dissenting to Denial of En Banc Consideration by:      Rebecca Simmons, Justice
joined by Catherine Stone,
Chief Justice

Delivered and Filed:   June 23, 2010

The court's opinion in this case expands the current case law relating to an investigative stop by a police officer. Never has this court upheld an investigative stop based on such a paucity of facts. Even the characterization of the anonymous informant as a citizen informant does not provide the necessary reliability to render this stop valid. As a matter of law, the totality of the circumstances did not provide reasonable suspicion for the investigative stop of Martinez. Because I also believe the opinion conflicts with this court's prior opinion in *State v. Simmang*, 945 S.W.2d 219 (Tex. App.—San Antonio 1997, no pet.), I respectfully dissent to the denial of the motion for rehearing en banc. *See* TEX. R. APP. PROC. 41.2(c) (favoring en banc review when necessary to "maintain uniformity of the court's decisions").

As noted by the court, when reviewing a trial court's decision on a motion to suppress, a bifurcated standard of review is applied. *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007). In this case, however, the facts are undisputed. The issue presented is a legal question: whether the totality of the circumstances is sufficient to support an officer's reasonable

suspicion. *Madden v. State*, 242 S.W.3d 504, 517 (Tex. Crim. App. 2007). The burden was on the State to elicit testimony showing sufficient facts to create a reasonable suspicion. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005); *State v. Griffey*, 241 S.W.3d 700, 703 (Tex. App.—Austin 2008, pet ref'd).

Only one witness, Officer Hurley, testified at the suppression hearing. To support the stop in this case, Officer Hurley had to point to "specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person actually is, has been, or soon will be engaging in criminal activity." *Ford*, 158 S.W.3d at 492; *see also Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). These facts must amount to "more than mere hunch or suspicion." *Brother v. State*, 166 S.W.3d 255, 277 (Tex. Crim. App. 2005). Importantly in this case, "[w]e look only at those facts known to the officer at the inception of the stop—a stop or search unlawful at its inception may not be validated by what it turns up." *State v. Griffey*, 241 S.W.3d at 704 (citing *Wong Sun v. United States*, 371 U.S.471, 484 (1963)). "The reasonableness of official suspicion must be measured by what the officers knew before they conducted their search." *Florida v. J.L.*, 529 U.S. 266, 271 (2000). With these precepts in mind, we turn to the record and the testimony of Officer Hurley.

Officer Hurley testified that dispatch put out a call that a vehicle had stopped and "someone supposedly put some bicycles in the back of a pickup truck in a general area of town."[1] When asked how dispatch received the information, Officer Hurley stated "from the anonymous caller." The only identification provided by the dispatcher was that the person who called in was "simply a passerby."[2] No further information was provided about the passerby, and Officer Hurley admitted that "all I got [from dispatch] was a vehicle description and a male

---

[1] At the hearing, Officer Hurley identified on a map the location of the stop which was some fifteen blocks from where the incident allegedly occurred.

[2] Nowhere in the record is the passerby identified by name.

driving the vehicle." The vehicle description was merely a blue Ford truck. Immediately before Officer Hurley made the stop, he pulled up behind Martinez and asked dispatch for any additional identification for the vehicle. Importantly, dispatch repeated twice that the pickup was blue in color. Officer Hurley then stopped Martinez even though he was driving a **green** Ford truck and no bicycles were visible in the back of the truck. Officer Hurley testified that he made the stop because the vehicle came from the general area where the activity was reported, and it was a Ford pickup driven by a male.[3] He personally saw no illegal activity. Surprisingly, this court concludes Officer Hurley had reasonable suspicion to stop Martinez based on the reliability of the unnamed informant. As shown below, the unnamed informant does not provide any additional support for this stop.

The case law is clear, an anonymous tip, standing alone, seldom provides the reasonable suspicion necessary to authorize an investigative stop and detention. *J.L.* 529 U.S. at 269; *Hall v. State*, 74 S.W.3d 521, 525 (Tex. App.—Amarillo 2002, no pet.) (citing *Alabama v. White*, 496 U.S. 325, 329 (1990)); *Davis v. State*, 989 S.W.2d 859, 863 (Tex. App.—Austin 199, pet. ref'd). This is because there is no way to evaluate the reliability of the information provided by the source. *Juarez v. State*, No. 04-09-00411-CR, 2010 WL 374399, at *2 (Tex. App.—San Antonio Feb 03, 2010, no pet. h.) (citing *Brother v. State*, 166 S.W.3d 255, 259 n.5 (Tex. Crim. App. 2005)); *Hall*, 74 S.W.3d at 525. "Consequently, there must be some further indicia or corroboration from which a police officer may reasonably conclude that the tip is reliable and a detention is justified."[4] *Hall*, 74 S.W.3d at 525 (citing *Garcia v. State*, 3 S.W.3d 227, 235 (Tex. App.—Houston [14th Dist.] 1999, no pet.)); *see also Waller v. State*, No. 05-09-00097-CR, 2009

---

[3] Curiously, Officer Hurley testified he would have pulled over a Ford pickup even if it had been driven by a woman. Apparently Officer Hurley did not give much credence to the passerby's information.

[4] The tip must be corroborated not only as to the identity of the individual sought to be accused, but also as to the improper nature of his conduct. *Hall v. State*, 74 S.W.3d 521, 525 (Tex. App.—Amarillo 2002, no pet.).

WL 4642850, at *1 (Tex. App.—Dallas Dec. 9, 2009, no pet.) (holding corroboration insufficient). Notably, "[t]he corroboration of details that do not indicate criminal activity will not provide support for the anonymous tip." *See Johnson v. State*, 146 S.W.3d 719, 721 (Tex. App.—Texarkana 2004, no pet.); *Stewart v. State*, 22 S.W.3d 646, 648 (Tex. App.—Austin 2000, pet. ref'd). The Supreme Court confirmed in the leading case of *Florida v. J.L* that:

> An accurate description of a subject's readily observable location and appearance is of course reliable in this limited sense: It will help the police correctly identify the person whom the tipster means to accuse. Such a tip, however, does not show that the tipster has knowledge of concealed criminal activity. The reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, *not just in its tendency to identify a determinate person.*

*J.L.*, 529 U.S. at 272 (emphasis added).

Based on the record in this case and the paucity of any corroboration, it is clear that the stop is unsupportable because it was based on an anonymous tip.[5] *See Davis*, 989 S.W.2d at 865. Perhaps that is why the court goes to extraordinary lengths to convert what the State, defense, and trial court referred to at the suppression hearing as an anonymous tip into a reliable tip by a citizen informant.[6] However, even this characterization cannot provide what the record lacks.

## A.  Informant's Tip

It is undisputed that, when he made the stop, Officer Hurley did not know the caller was anything other than an "anonymous passerby." The dispatcher did not testify and there is no evidence that the caller gave his or her name, stayed on the line, or provided any information to the dispatcher other than the fact that a male in a blue Ford truck picked up two bikes from a certain location and drove away. No evidence exists in the record that any cooperating officer or

---

[5] The parties consistently refer to the informant as an anonymous caller in their briefs before this court.

[6] If the informant puts himself in a position to be easily identified and held accountable for his intervention then the reliability of the tip may be greater than that of an anonymous tipster. *See Mitchell v. State*, 187 S.W.3d 113, 117 (Tex. App.—Waco 2006, pet. ref'd); *Pipkin v. State*, 114 S.W.3d 649, 655 (Tex. App.—Fort Worth 2003, no pet.)

even the dispatcher knew any additional facts other than those testified to by Officer Hurley. There is evidence that after the stop Officer Hurley asked dispatch if there were any complainants or victims and dispatch replied no, only the passerby. Officer Hurley then asked dispatch to send the passerby to the stop, and the passerby subsequently arrived. From these facts the court concludes: "the dispatcher apparently maintained contact with the caller throughout the stop as the dispatcher was able to direct the caller to the scene to identify the truck." It is this unfounded surmise that permits the court to rely on authority pertaining to citizen informants who stay on the line with police providing added corroboration and details not present in this case. *See Reesing v. State*, 140 S.W. 3d 732, 737 (Tex. App.—Austin 2004, pet ref'd) (caller stayed on line and police knew caller on line before the stop); *Hawes v. State*, 125 S.W.3d 535, 540 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (tow truck driver relayed information to police as he followed driver before stop).

This court's reasoning relating to the informant fails for two reasons. First, there is no evidence in the record that the caller remained on the line with dispatch while the stop was made. It is just as likely that the dispatcher obtained the caller's number from caller identification. We just don't know. Second, even if the dispatcher remained on the line with the caller, Officer Hurley did not know that fact before he effectuated the stop and thus, it cannot form the basis of his reasonable suspicion. *Hawes*, 125 S.W.3d at 538 (citing *Davis v. State*, 947 S.W.2d 240, 242-44 (Tex. Crim. App. 1997) (in determining whether reasonable suspicion exists, one must look to the facts available to the officer at the moment of detention)). The cases the court relies

upon to bolster the reliability of the informant are distinguishable because in those cases the officer knew the informant was on the line or the citizen informant spoke directly to the officer. [7]

In *Reesing v. State*, Hankins, a citizen informant, reported to police that he had personally spoken to the appellant and the appellant was intoxicated and driving. *Reesing*, 140 S.W.3d at 734. This information was relayed to Officer Simpson who made the stop. *Id*. at 734-35. The court noted: "Simpson was regularly updated regarding appellant's activities: 'They were continuously giving information. The person who called was still on their cell phone the whole time, they never hung up.'" *Id*. at 735. The court held that given the detailed information known to the officer, it was not unreasonable for the officer to rely on the information from the citizen. *Id*. at 737.

Likewise, in *Hawes v. State*, the witness tow truck driver, Clevenger, radioed his dispatcher and told him of Hawes' erratic driving. *Hawes*, 125 S.W.3d at 537. A police dispatcher sent Officer Cargile in pursuit and gave him information about the vehicle, its location, and the wrecker driver who was still following the vehicle. *Id*. The court held that the police officer could consider Clavenger's information reliable because he was driving a tow truck through which his identity could be easily traced, and the officer saw him following the suspect. *Id*. at 540. In *State v. Salio*, 910 S.W.2d 184, 188 (Tex. App.—Fort Worth 1995, pet. ref'd), the informant personally spoke to the officer and told him that he had seen a pickup truck driving erratically. He specifically described the truck and its driver to the officer. *Id*. The court gave greater reliability to the citizen informant because he confronted the officer in person with details of his observation. *Id*.

---

[7]  This is not a case where a stop was made based on facts observed by another officer or solely at the request of another officer, in which case the focus would lie on the information known to the officer who made the request. *See State v. Jennings*, 958 S.W.2d 930, 933 n.2 (Tex. App.—Amarillo 1997, no pet.).

In this case Officer Hurley was required to provide articulable facts that would allow this court to determine the circumstances upon which Hurley could reasonably conclude that Martinez actually had been engaged in criminal activity.  *See Ford*, 158 S.W.3d at 492.  The articulable facts the court references are:

1. The vehicle was coming from an area where the activity had been reported;[8]
2. The vehicle was a blue Ford pickup;[9]
3. Officer Hurley did not see any other vehicles in the area;[10] and
4. Officer Hurley stopped the truck within seven minutes from when he heard the call from dispatch;[11]

A review of pertinent case law reveals that such scant facts will not support a detention.

In *Florida v. J.L.*, the police were informed by an anonymous tip that a young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun.  *J.L.*, 529 U.S. at 268.  The police went to the stop and saw three black youths, one of whom was wearing a plaid shirt.  The officers frisked J.L. and found a gun.  *Id.*  The Supreme Court rejected Florida's argument that because J.L. was at the bus stop and wearing a plaid shirt the officers had reasonable suspicion for the detention.  *Id*. at 271-72.  The stop in this case was supported by far less.  By analogy, it would be as if J.L.were stopped ten blocks from the bus stop wearing a black t-shirt.  Martinez was driving a green pickup and was found approximately fifteen blocks from the incident.  Like the concealed gun, the bikes in Martinez' pickup were not apparent to Officer Hurley prior to the detention.

*Davis v. State* has many similarities to this case in that it originated from an unidentified caller who claimed a black Chevy Blazer with dealer tags 5D1180 was traveling in the area of mile post 259 on I-35 in a reckless manner.  *Davis*, 989 S.W.2d at 861.  The caller described three

---

[8]  As reflected by the marked map, the area encompasses over fifteen city blocks.

[9]  Officer Hurley stopped a green Ford pickup.

[10]  Officer Hurley testified there were some vehicles out Sunday night, just not the same amount of traffic as earlier in the evening.  The video in evidence reflects that other vehicles were in the area.

[11]  There is no evidence in the record of when dispatch received the call from the passerby.

occupants "possibly smoking marijuana." *Id*. Officer Stengle stopped the Chevy Blazer at mile post 263 on I-35. *Id*. As in this case, Officer Stengle acknowledged that he stopped the Blazer solely based on the anonymous caller. *Id*. The court held the specific identity of the vehicle, its location, and its occupants were insufficient to furnish reasonable suspicion. *Id*. at 864. As in this case, "[t]here was nothing to link the occupants to the criminal activity reported." *Id*. at 865.

Likewise, *Waller v. State* involved a tip from a concerned citizen that was insufficient to support a stop. *Waller*, 2009 WL 4642850, at *1. Officer Kelly was on patrol when dispatch advised him that a concerned citizen had called to report a possible intoxicated driver. *Id*. The caller had given a description of a gray passenger car and a general location. *Id*. No other facts were provided. The court noted that although dispatch had the caller's name and telephone number, the officer never contacted the caller for more information. *Id*. Officer Kelly stopped a car matching the general description. *Id*. The court held, however, that based on the vagueness of the tip and Officer Kelly's admission that he did not corroborate the caller's suspicion, Officer Kelly lacked reasonable suspicion for the stop. *Id*.

*Stewart v. State*, 22 S.W.3d at 648, also involved an illegal detention based on a caller who described an individual at a convenience store who was falling down at the gas pumps and looked intoxicated. The caller stated that it appeared the individual was going to drive a green Camaro. *Id*. An officer saw a green Camaro leaving the gas station and stopped the vehicle. *Id*. The court held the corroboration of the caller's information of a green Camaro occupied by two individuals did not give the officer any basis for crediting the informer's accusation that the driver of the Camaro was intoxicated. *Id*. at 649. "Indeed given the generality of the radioed description, it is not clear that the officer could even be sure that the automobile was being driven by the man seen to fall by the informer." *Id*.

The foregoing cases establish that an unidentified caller providing a general location together with a general description of the vehicle and occupant will not suffice to provide reasonable suspicion for a stop. This court recognized that more was needed in *State v. Simmang*, 945 S.W.2d at 224.

## B.  STATE V. SIMMANG

In *Simmang*, the dispatcher received a call from an anonymous person claiming that a lone white male was committing a sexual offense in a "gold-colored four door sedan" in a parking lot at a particular intersection. *Id.* at 220. Similar to this case, the officer in *Simmang* did not talk to the informant, or know the identity, reliability, or source of the informant's knowledge prior to the stop. *Id.* The officer went to the parking lot, saw a gold-colored four door sedan and detained the driver. *Id*. at 220-21.

In holding the detention was unlawful, the court in *Simmang* noted the tip did not give any "description of the offending individual as to age, physical appearance, or clothing." *Id*. at 224. The description of "white male" in *Simmang* "would fit a large segment of the population." *Id*. Further, the court took issue with the officer's testimony that he "did not see any other gold-colored cars," noting that "[a]n individual in an automobile is highly mobile." *Id*. The court noted the license plate number and model of car—which would more specifically identify the perpetrator—was lacking. *Id*. Because Simmang was "detained on the basis of the unsubstantiated suspicions of an anonymous caller of an unknown reliability and without specific and articulable facts to justify the stop," the court held the totality of the circumstances created an unlawful detention and upheld the suppression of evidence. *Id*.

This case presents far fewer facts to support a stop than *Simmang*. Here the description of a "male" driver fits an even larger population base. In *Simmang*, the police found the vehicle

in the parking lot where the tipster said the offense was occurring.  Here the green truck was merely coming from the general area, not even on the same street, some fifteen blocks away from the location of the alleged offense.[12]  The inconsistency in approach between *Simmang* and this case is glaring.

## CONCLUSION

Because I believe the panel's opinion conflicts with this court's prior holding in *Simmang*, and because the opinion misconstrues current case law regarding anonymous tips and the requisite corroboration, I believe en banc consideration is warranted.  *See Simmang*, 945 S.W.2d at 220; TEX. R. APP. PROC. 41.2(c).  I, therefore, respectfully dissent to the denial of the motion for rehearing en banc.

Rebecca Simmons, Justice

Publish

---

[12] Like *Simmang*, the dispatcher did not identify when the tipster called in the tip.