Stephen Calhoun HAWES, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–00–00601–CR.

Court of Appeals of Texas, Houston (1st Dist.).

Feb. 28, 2002.

Rehearing Overruled April 15, 2002.

W. Troy McKinney, Houston, for Appellant.

Kelly Ann Smith, Asst. Dist. Atty., John B. Holmes, Dist. Atty., Houston, for State.

Panel consists of Chief Justice SCHNEIDER and Justices WILSON and JENNINGS.

## OPINION

MICHAEL H. SCHNEIDER, Chief Justice.

A jury found appellant guilty of misdemeanor driving while intoxicated. The court sentenced him to 180 days in county jail, probated for 18 months. During the trial, the court denied appellant's motion to suppress evidence. Additionally, appellant's objection to the admission of a post-arrest statement was denied. He now appeals. We affirm.

## Background

On August 14, 1999, Kenneth Clevenger was driving a tow truck on Nasa Road 1 in Harris County when, according to his testimony, a vehicle driven by appellant approached from behind, almost hit his truck, and then temporarily entered a grassy median after passing him. Mr. Clevenger radioed his tow truck dispatcher, who then contacted the City of Webster Police Department. The tow truck dispatcher relayed questions and answers between the police and Mr. Clevenger. A police dispatcher then contacted Officer Kevin Cargile and gave him information regarding the reported reckless driver. Specifically, Officer Cargile received a license plate number, a description of the vehicle, the vehicle's location, and its direction of travel. He was also told that the information had come from a wrecker driver who was still following the vehicle.

Officer Cargile located the vehicles on the road. He did not personally witness any traffic violations, but pulled appellant over based on the information he had re-ceived from the police dispatcher. Mr. Clevenger did not stop, but continued on his way after seeing that appellant had been pulled over. Later, at the request of the police, Mr. Clevenger gave a written statement describing the incident.

The officer noticed the smell of alcohol on appellant's breath and that his speech was slurred. Officer Cargile asked appellant if he had been drinking, and he answered that he had drunk three or four beers. A series of field sobriety tests were administered, and, in the officer's view, appellant failed several. The vehicle contained opened and unopened containers of beer and three passengers who appeared to be intoxicated.

After appellant was arrested, he was taken to a police station and was videotaped performing another series of physical and mental sobriety tests administered by Sergeant Jeffrey Tate. Appellant again failed several tests. At the conclusion of the tests, appellant was given an opportunity to make any statement he wished on videotape. He stated he was under a doctor's care for a neurological condition, and the medication he was taking made alcohol affect him more. Sergeant Tate testified that, when the taping was over, appellant stated he was taking a prescription antidepressant drug called Elavil. Also, appellant refused to give a breath sample.

## Reasonable Suspicion

In his first four points of error, appellant claims the trial court erred by denying his motion to suppress evidence, which challenged the legality of the initial traffic stop. He claims that the officer did not possess the reasonable suspicion necessary to justify the stop and thereby violated his rights under the Fourth Amendment of the United States Constitution and article I, section 9 of the Texas Constitution.

Questions of reasonable suspicion and probable cause are reviewed *de novo* on appeal. *See Guzman v. State,* 955 S.W.2d 85, 87–88 (Tex.Crim.App.1997); *State v. Garcia,* 25 S.W.3d 908, 911 (Tex. App.-Houston [14th Dist.] 2000, no pet.). During a motion to suppress hearing, the trial court is the sole trier of fact, and, accordingly, the judge may choose to believe or disbelieve all or any part of a witness's testimony. *State v. Ross,* 32 S.W.3d 853, 855 (Tex.Crim.App.2000). When, as here, no findings of fact are filed, we must view the evidence in the light most favorable to the ruling and sustain the decision if it is correct on any applicable theory of law. *Id.* at 855–56.

It is well settled that a police officer may stop and briefly detain persons suspected of criminal activity, but the officer must possess a reasonable suspicion to justify this investigative detention. *See Davis v. State,* 947 S.W.2d 240, 242–44 (Tex.Crim.App.1997) (discussing *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) and Texas case law). The totality of the circumstances must be examined when determining the reasonableness of an investigative stop. *See Woods v. State,* 956 S.W.2d 33, 38 (Tex.Crim.App.1997); *Stewart v. State,* 22 S.W.3d 646, 648 (Tex. App.-Austin 2000, pet. ref'd); *Garcia,* 25 S.W.3d at 912. In determining whether reasonable suspicion existed, we look to the facts available to the officer at the moment of detention. *See Terry,* 392 U.S. at 21–22, 88 S.Ct. at 1880; *Davis,* 947 S.W.2d at 243; *Garcia,* 25 S.W.3d at 912.

An anonymous tip alone will rarely establish the level of suspicion required to justify a detention. *Florida v. J.L.,* 529 U.S. 266, 270, 120 S.Ct. 1375, 1378, 146 L.Ed.2d 254, (2000); *Alabama v. White,* 496 U.S. 325, 329, 110 S.Ct. 2412, 2415, 110 L.Ed.2d 301 (1990). However, there are situations in which an anonymous tip exhibits sufficient indicia of reliability to justify the detention. *J.L.,* 529 U.S. at 270, 120 S.Ct. at 1378. Several Texas courts of appeals have upheld investigative stops based solely on unsolicited reports from private citizens. *See State v. Fudge,* 42 S.W.3d 226, 232 (Tex.App.-Austin 2001, no pet.) (upholding detention based solely on cab driver's unsolicited personal report to officer about erratic driving); *Garcia,* 25 S.W.3d at 913–14 (holding that reasonable suspicion existed after individual "flagged down" officer in parking lot and personally reported incident, even though informant later left scene without identifying himself); *State v. Stolte,* 991 S.W.2d 336, 342–43 (Tex.App.-Fort Worth 1999, no pet.) (holding that traffic stop was justified based on tip from informant who witnessed erratic driving, called police on cellular phone, followed vehicle, and waited at scene when stop was made); *State v. Sailo,* 910 S.W.2d 184, 189 (Tex.App.-Fort Worth 1995, pet. ref'd) (upholding stop based on a report personally given to officer even though informant drove away before being identified).

Several of these courts have held that the reliability of a tip can be heightened to the point where an officer is justified in making a detention when an informant places himself in a position to be easily identified and held responsible for the information provided. *See Fudge,* 42 S.W.3d at 232 (noting that "primary indicia of reliability" in case was fact that informant put himself in position to be held accountable for his intervention); *Garcia,* 25 S.W.3d at 913 ("Unlike a person who makes an anonymous telephone call, an individual presenting himself to the officer in person, and doing so while driving a vehicle from which his identity might easily be traced, puts himself in a position to be held accountable for his intervention; thus, the reliability of the information he

provides is increased.") (citing *Sailo,* 910 S.W.2d at 188); *Stolte,* 991 S.W.2d at 341–42 (holding that "the fact the person put himself in a position to be held accountable for his intervention" makes tip more reliable). A firsthand account and detailed descriptions of wrongdoing likewise increase reliability. *See Illinois v. Gates,* 462 U.S. 213, 234, 103 S.Ct. 2317, 2330, 76 L.Ed.2d 527 (1983); *Sailo,* 910 S.W.2d at 189; *Stolte,* 991 S.W.2d at 342. The State argues that the unsolicited report in the present case likewise justified the investigative stop.

In contrast, appellant relies heavily on two cases from the Austin Court of Appeals, *Davis v. State* and *Stewart v. State,* where unsolicited citizen reports were held inadequate to create reasonable suspicion. *Davis v. State,* 989 S.W.2d 859 (Tex.App.-Austin 1999, pet. ref'd); *Stewart v. State,* 22 S.W.3d 646 (Tex.App.-Austin 2000, pet. ref'd). However, these cases are distinguishable from the instant case.

*Davis* held that an anonymous phone tip that served as the sole basis for a detention was not sufficient to create reasonable suspicion. *Davis,* 989 S.W.2d at 865. There, the officer received a description of the vehicle, a dealer tag number, the recent location of the vehicle, its direction of travel, a description of "three white males" in the vehicle, a description of a reckless driving maneuver that had previously occurred, and the informant's statement that the occupants were "possibly smoking marijuana." *Id.* at 861. The informant did not leave a name or address with the dispatcher, and no one stopped at the scene claiming to be the informant. *Id.*

In *Stewart,* the Austin court again held that an investigative detention was not justified by reasonable suspicion. *Stewart,* 22 S.W.3d at 650. Again, a telephone tip was the sole basis for the stop. The officer was told that the driver of a green Camaro parked at a convenience store had fallen down while trying to enter the vehicle and appeared highly intoxicated. *Id.* at 648. The officer arrived on the scene as a car matching the informant's description was pulling away. After following the car briefly, the officer stopped the car although he had observed no traffic violations. The caller was never identified. *Id.*

In both *Davis* and *Stewart,* the informant was not identified and was essentially *unidentifiable.* Here, although Officer Cargile was not given the name or address of the informant, he did know that the informant was a tow truck driver who was following the appellant. He then observed a tow truck following a vehicle that matched the description he had been given. This made Mr. Clevenger much more identifiable than the informants in either *Davis* or *Stewart.*

One who presents himself to an officer while driving a vehicle through which his identity might easily be traced puts himself in the position to be held accountable for the reliability of the information. *Sailo,* 910 S.W.2d at 188; *see also Fudge,* 42 S.W.3d at 231–32 (analogizing to *Sailo* ); *Garcia,* 25 S.W.3d at 913 (discussing and citing *Sailo* ). Although the informant here did not present himself to the officer "face to face" as in *Sailo, Fudge,* and *Garcia,* he was still in a position to be identified by his presence in the tow truck, a readily traceable vehicle that the officer observed following the suspect.[1] We note that in *Sailo* the informant was never actually identified, but the mere willingness of the informant to place himself in a position

---

1. Although unknown to the officer at the time, Mr. Clevenger had given his name to the police dispatcher via his tow truck dispatcher.

where he *could* be identified increased the reliability of the information and helped to justify the stop. *See Sailo,* 910 S.W.2d at 187, 188.

Further, the Austin Court of Appeals distinguished *Stewart* from *Stolte,* which the State had cited as supporting the stop. The court noted that *"Stolte* did not involve a tip from a truly anonymous informer who could not be held responsible if the information he provided proved to be fabricated." *Stewart,* 22 S.W.3d at 650. The Austin court later confirmed that it would uphold stops where the informant was in a position to be held responsible when it reversed the trial court's suppression of evidence in *Fudge. Fudge,* 42 S.W.3d at 232.[2]

■ Here, as noted above, the informant was in a position to be identified. Thus, we find the facts of *Fudge, Sailo, Stolte,* and *Garcia* to be more analogous to the current situation than those in *Davis* and *Stewart.* We hold that the officer made a legal investigative stop based on the information received from Mr. Clevenger, the tow truck driver. Clevenger was not a "truly anonymous informer" as in *Stewart;* rather, after presenting his information to the police via his business's dispatcher, he followed the suspect in his own readily traceable vehicle, thus placing himself in a position where he could be held accountable for his intervention. *See Fudge,* 42 S.W.3d at 232. This indicia of reliability, when combined with the officer's corroboration of the identification details, and viewed in the totality of the circumstances, provided sufficient reasonable suspicion to justify the investigative stop.

We overrule appellant's first four points of error.

2. It is noteworthy that the majority opinion in

## Admission of Appellant's Unrecorded Statement

In his fifth point of error, appellant contends the trial court erred when it allowed Sergeant Tate to testify about appellant's unrecorded comment regarding his use of Elavil. During the State's direct examination of Sergeant Tate, the following exchange took place:

[State]: All right. Sgt. Tate, did the defendant tell you about any types of medication that he was on?

[Sergeant Tate]: Yes, ma'am. During the interview after the video on the over 21 which [sic] additional questions are asked he advised us—

[defense counsel]: 39.22[sic] objection.

THE COURT: Do you have a response?

[defense counsel]: No electronic recording. Interrogation not electronically recorded. He was in custody.

THE COURT: Overruled.

[State]: What kind of medication did the defendant say he was on?

[Sergeant Tate]: He advised me that he was taking Elavil, an antidepressant.

Appellant contends his comment was made in response to custodial interrogation; thus, the failure to electronically record the statement makes it inadmissible under Code of Criminal Procedure article 38.22 section 3(a), which states in relevant part:

No oral or sign language statement of an accused made as a result of custodial interrogation shall be admissible against the accused in a criminal proceeding unless:

(1) an electronic recording, which may include motion picture, video tape, or other visual recording, is made of the statement; . . . .

*Fudge* cited to *Sailo* extensively.

Tex.Code Crim. Proc. Ann. art. 38.22, § 3(a) (Vernon Supp.2002).

It is undisputed that the comment was made while appellant was in custody and was not electronically recorded. We need not address whether the statement was made in response to interrogation because, even if we assume the admission of this testimony was error, it did not affect the substantial rights of appellant. *See* Tex. R.App. P. 44.2(b).

*Harm Analysis*

For purposes of this harm analysis, we will assume without deciding that it was error, in violation of article 38.22 section 3(a)(1), to allow the officer to testify about the unrecorded statement. We must first decide if the constitutional error review standard should be applied. *See* Tex. R.App. P. 44.2(a). The Tyler Court of Appeals has held that admitting evidence in violation of article 38.22 section 3(a)(1) is constitutional error because it implicates the constitutional right against self-incrimination. *O'Neal v. State,* 999 S.W.2d 826, 831 (Tex.App.-Tyler 1999, no pet.). We disagree, and we will apply the non-constitutional standard of Rule 44.2(b) because article 38.22 section 3(a)(1) is best characterized as a statutory addition to constitutional protections.

While article 38.22 and federal self-incrimination case law do overlap in some areas, *Miranda* and its progeny do not contain anything akin to the statute's limits on oral self-incriminating statements. *See* 41 George E. Dix & Robert O. Dawson, Texas Practice: Criminal Practice and Procedure § 13.33 (2d ed.2001). The United States Constitution does not require the electronic recording of oral statements made in response to custodial interrogation. *See United States v. Yunis,* 859 F.2d 953, 961 (D.C.Cir.1988) ("[T]here is no constitutional requirement that confessions be recorded by any particular

means."). Neither is it required by the Texas Constitution. Furthermore, the Court of Criminal Appeals has utilized Rule 44.2(b) when analyzing harm under article 38.22 section 2, a similar section which limits the admissibility of *written* statements made as a result of custodial interrogation. *Moore v. State,* 999 S.W.2d 385, 402 (Tex.Crim.App.1999).

■ Under Rule 44.2(b), non-constitutional error must be disregarded if it does not affect substantial rights. Tex.R.App. P. 44.2(b). A "substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State,* 953 S.W.2d 266, 271 (Tex.Crim.App.1997). Thus, we must decide whether the error had a substantial or injurious effect on the jury verdict. *Morales v. State,* 32 S.W.3d 862, 867 (Tex.Crim.App.2000). The very process of reaching this decision is the performance of a Rule 44.2(b) harm analysis. *Id.*

■ In assessing the likelihood that the jury's decision was adversely affected by the error, we consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error, and how it might be considered in connection with other evidence in the case. *Morales,* 32 S.W.3d at 867. We may also consider the jury instruction given by the trial judge, the State's theory and any defensive theories, closing arguments, and even voir dire, if material to the claim. *Id.* In short, we examine the record as a whole when conducting a harm analysis. *Id.* We should not overturn a conviction for non-constitutional error if, after examining the record as a whole, we have fair assurance that the error did not influence the jury, or had but a slight

effect. *Id.; Johnson v. State,* 967 S.W.2d 410, 417 (Tex.Crim.App.1998).

 We have reviewed the entire record and find there was strong evidence supporting the verdict. At the scene, appellant's breath smelled of alcohol and his speech was slurred. He admitted drinking three or four beers. Alcohol and passengers who appeared to be intoxicated were present in the vehicle. Appellant then performed poorly in several field sobriety tests. This was followed by appellant's poor performance in the videotaped sobriety tests.

Next, we consider the character of the alleged error and how it might be considered in connection with other evidence in the case. The State did not introduce any evidence detailing the effects of Elavil. To the contrary, the only evidence suggesting that the drug could affect driving was appellant's electronically recorded statement that he was taking unnamed medication that made alcohol affect him more.

The unrecorded statement helped to corroborate appellant's recorded statement. Also, it described the drug as an antidepressant and provided its name. In its closing argument, though, the State emphasized appellant's recorded statement, but did not use the name Elavil or describe the drug as an antidepressant.[3] A juror would likely have given substantial weight to the recorded statement where appellant himself stated he was on medication that made alcohol affect him more, while the unrecorded statement added relatively little to the State's case.

Given the strong evidence of guilt and the lack of emphasis placed on the unrecorded statement by the State, we have

more than fair assurance that if the admission of the unrecorded statement was error, it could only have had no more than a slight effect on the jury's verdict. Therefore, it did not affect appellant's substantial rights.

We overrule appellant's fifth point of error.

We affirm the judgment.

---

**3.** The State argued,

> He even tells you on that video tape that he is taking medication that makes the alcohol affect him, that makes it even worse. Because he is taking the medication he knows that the alcohol affects him and then he is drinking and getting behind the wheel and driving.