NUMBER 13-02-395-CV


COURT OF APPEALS
 
THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG






IN THE MATTER OF D.P.M., JUVENILE





On appeal from County Court at Law No. 3
of Montgomery County, Texas.




MEMORANDUM OPINION

Before Chief Justice Valdez and Justices Hinojosa and Castillo

Memorandum Opinion by Justice Castillo

         The State charged appellant D.P.M., a juvenile, with possession of more than
four ounces but less than five pounds of marijuana.


 The State petitioned for an
adjudication that D.P.M. had engaged in delinquent conduct.


 Following denial of his
motion to suppress, D.P.M. pleaded true to the charge. The trial court accepted an
agreed disposition committing D.P.M. to the Texas Youth Commission. By one issue,
D.P.M. challenges the trial court's denial of his motion to suppress. We affirm.
I. JURISDICTION
         Section 56.01(n) of the Texas Family Code provides a juvenile applicant the
right to appeal under certain circumstances: 
A child who enters a plea or agrees to a stipulation of evidence in a
proceeding held under this title may not appeal an order of the juvenile
court entered under Section 54.03, 54.04, or 54.05 if the court makes
a disposition in accordance with the agreement between the state and
the child regarding the disposition of the case, unless:
 
(1) the court gives the child permission to appeal; or
 
(2) the appeal is based on a matter raised by written motion filed before
the proceeding in which the child entered the plea or agreed to the
stipulation of evidence. 

Tex. Fam. Code Ann. § 56.01(n) (Vernon Supp. 2004). This appeal challenges the trial
court's ruling on D.P.M.'s written motion to suppress, which was filed before D.P.M.
pleaded true to the allegations. Accordingly, D.P.M. has the right to appeal his
suppression issue. See id.; see also In re D.A.R., 73 S.W.3d 505, 509 (Tex. App.–El
Paso 2002, no pet.).  
II. FACTUAL BACKGROUND
          Ricky Redmon telephoned the Montgomery County Sheriff's Office, asking for
help in a drug-related matter. According to Don Likens,


 a member of the special
investigations unit at the Montgomery County Sheriff's Office, Redmon had
intercepted a telephone call at his house apparently intended for his son. Redmon,
whose voice sounds much like his son's, allowed the caller to believe he was talking
to his son. The caller said they had met recently at a party. "I have a kilo coming in,"
the caller reported. "How much money do you have?" Redmon replied that he had
$100. The caller told him to see if he could get more money and call him back. 
Redmon agreed. The caller gave Redmon a telephone number at which to reach him. 
         Likens met Redmon at his house and discussed the telephone call. Redmon told
Likens that his son was out of town. Redmon was very concerned. His son had been
through "rehab," he told the officer. He was worried his son was using drugs again. 
Likens found Redmon credible. 
         At 4:00 p.m. that day, Likens and Redmon telephoned the caller. They 
recorded the conversation. Redmon told the caller he had sold his stereo equipment
for $450. He asked what that would get him. The caller told Redmon he could
purchase a half pound for $270. Given the price and the quantity, Likens concluded 
that the drug being offered for sale was marijuana. 
         Redmon agreed to the purchase. The caller told him to drive to a specific street
in a wooded residential area and pull over to the side of the road. The caller would
walk out to Redmon's car with the drugs. The exchange was scheduled for 5:00 p.m. 
The caller told Redmon to call him back and let him know when Redmon was leaving
for the meeting. 
         Likens investigated the proposed meeting place. He decided he wanted more
control over the meeting. For safety reasons and ease of surveillance, he wanted the
meeting to occur in a more open area. He suggested changing the location to a
shopping center parking lot about a half mile away from the initial meeting site. He
arranged for surveillance by multiple unmarked police units.  
         As planned, Redmon telephoned the caller at 5:00 p.m. He said he was in front
of an Albertsons store in the shopping center parking lot. The caller said he was
twenty to thirty minutes away. At 5:40 p.m., Redmon again telephoned. The caller
told him that he was approximately five minutes away. The caller said he would meet
Redmon in front of Brother's Pizza, next to Albertsons in the same shopping center. 
Redmon told the caller he would be waiting in a beige Lincoln. The caller said he
would be arriving in a black Yukon. 
         After the meeting was arranged, Likens waited in the beige Lincoln. Within
minutes, a surveillance unit contacted Likens by radio. A black Yukon had entered the
parking lot. The Yukon traveled slowly through the parking lot. It pulled behind the
Lincoln but did not stop. 
         A marked police unit stopped the Yukon. The unmarked surveillance units
surrounded the vehicle. Officers ordered the driver and his passenger out of the
vehicle and onto the ground. They handcuffed them "for officer safety and their
safety." According to Likens, "There were a lot of people in the parking lot," and it
was "merely a way to control the situation so it didn't escalate." 
         Likens spoke with the driver and owner of the Yukon, who consented to a
search of the vehicle. Likens asked D.P.M., the passenger, his name and if he knew
why he was in the parking lot. D.P.M. responded he "had no idea" why he was there.
         Officers took the driver and D.P.M. to a patrol vehicle. Others began searching
the Yukon. They found three clear plastic bags containing 11.67 ounces of marijuana
in the console between the front seats.


 
         Likens testified to the foregoing facts at the suppression hearing. He said he
had probable cause to make an arrest based on D.P.M.'s arrival at the place identified
in the phone call, in the vehicle described in the phone call, at the time stated in the
phone call. 
III. MOTION TO SUPPRESS
         D.P.M. contends that the trial court should have granted his motion to suppress
because his rights were violated when the authorities stopped the vehicle in which he
was riding without adequate cause or reasonable suspicion. He asserts that detention
of the vehicle and its passengers violated his right to be free from unreasonable
seizure. He argues that the search that followed is the only source of evidence leading
to his adjudication. 
 A. Standard of Review
         We review the trial court's ruling on a motion to suppress in a juvenile
proceeding under an abuse-of-discretion standard. See In re R.J.H., 79 S.W.3d 1, 6
(Tex. 2002); see also In re D.G., 96 S.W.3d 465, 467 (Tex. App.–Austin 2002, no
pet.). We defer to the trial court's findings of historical fact. R.J.H., 79 S.W.3d at 6. 
We review de novo the trial court's application of law to those facts. Id. Specifically,
we review de novo questions of reasonable suspicion and probable cause. See
Guzman v. State, 955 S.W.2d 85, 88-89 (Tex. Crim. App. 1997). Absent findings
of fact, we view the record in the light most favorable to the trial court's ruling. 
R.J.H., 79 S.W.3d at 6. 
B. Applicable Law
         An officer may conduct a brief investigative detention, or Terry stop, on
reasonable suspicion to believe that an individual is involved in criminal activity. Terry
v. Ohio, 392 U.S.1, 21 (1968); Balentine v. State, 71 S.W.3d 763, 767 (Tex. Crim.
App. 2002). We examine the reasonableness of a temporary detention in terms of the
totality of the circumstances. Specific, articulable facts, taken together with
reasonable inferences from those facts, justify a temporary detention when the
circumstances lead the detaining officer to conclude that the person detained actually
is, has been, or soon will be engaged in criminal activity. Balentine, 71 S.W.3d at 768
(citing Woods v. State, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997)). Reasonable
suspicion is dependent on both the content of the information possessed by the officer
and the degree of reliability of the information. See Bilyeu v. State, 136 S.W.3d 691,
at *5 (Tex. App.–Texarkana 2004, no pet. h.). In determining whether
reasonable suspicion existed, we look to the facts available to the officer at
the moment of detention. See Terry, 392 U.S. at 21-22; see also Davis v. State,
947 S.W.2d 240, 243 (Tex. Crim. App. 1997). 
C. Analysis
         As part of his initial investigation, Likens relied on information provided by
Redmon. Likens found Redmon credible. We conclude it was reasonable for
Likens to find Redmon's information trustworthy, particularly given Redmon's
status as a known citizen and independent source. See, e.g., Hawes v. State,
125 S.W.3d 535, 539-40 (Tex. App.–Houston [1st Dist.] 2002, no pet.) (contrasting
reliability of information from known and unknown informants); State v. Garcia,
25 S.W.3d 908, 913 (Tex. App.–Houston [14th Dist.] 2000, no pet.) (contrasting
reliability of information provided by unnamed informants, paid informants, and
identified citizens). Moreover, by participating in and directing the recorded telephone
calls with D.P.M., Likens corroborated the information he received from Redmon
regarding the proposed drug transaction. See Reesing v. State, No. 03-03-471-CR,
2004 Tex. App. LEXIS 5090, at *6 (Tex. App.–Austin June 10, 2004, no pet. h.)
(finding that corroboration of information related by informant may increase reliability
of information); see also Hawes, 125 S.W.3d at 540 (finding that known informant
provided indicia of reliability, which, combined with officer's corroboration of
identification details, created reasonable suspicion). Further, D.P.M. arrived at the
designated location at the appointed time in a black Yukon, all of which matched the
details the caller arranged with Redmon. Based on the totality of the circumstances,
we conclude that Likens articulated specific facts that led him to conclude that the
occupants of the car, including D.P.M., were or would soon be engaged in criminal
activity. 
         We conclude that the totality of the circumstances gave Likens reasonable
suspicion to stop and detain the occupants of the black Yukon. Woods, 956 S.W.2d
at 38. We hold that the trial court did not abuse its discretion in denying D.P.M.'s
motion to suppress. Accordingly, we overrule D.P.M.'s sole issue on appeal. 
IV. CONCLUSION
         We affirm the judgment of the trial court. 
 
                                                                        ERRLINDA CASTILLO
                                                                        Justice
Memorandum Opinion delivered and filed
this 12th day of August, 2004.