ACCEPTED
12-15-00128-CR
TWELFTH COURT OF APPEALS
TYLER, TEXAS
8/17/2015 12:00:00 AM
CATHY LUSK
CLERK

**NO. 12-15-00128-CR**

RECEIVED IN
12th COURT OF APPEALS
TYLER, TEXAS
8/16/2015 1:15:36 PM
CATHY S. LUSK
Clerk

# IN THE TWELFTH COURT OF APPEALS

## TYLER, TEXAS

FILED

8/17/2015

Twelfth Court of Appeals
Cathy Lusk
Clerk

**ROBERT LAFAYETTE WALKER,**

**APPELLANT**

**V.**

**THE STATE OF TEXAS,**

**APPELLEE**

**APPELLANT'S BRIEF**

Beverly D. Melontree
Attorney at Law
213 South Fenton Avenue
Tyler , Texas  75702
Bmelontree@icloud.com

# IDENTITY OF PARTIES AND COUNSEL

## Attorney for Appellant

Appellant/Trial Counsel:

Beverly D. Melontree
213 South Fenton Avenue
Tyler, Texas 75702

## Attorney for the State on Appeal

Michael J. West
Assistant Criminal District Attorney
Smith County District Attorney's Office
100 North Broadway Avenue, 4th Floor
Tyler, Texas 75702

# TABLE OF CONTENTS

Identity of Parties and Counsel……………………………………………….  ii

Table of Contents…………………………………………………………..  iii

Index of Authorities………………………………………………………..  iv

Statement of the Case………………………………………………………  2

Issues Presented……………………………………………………………  2

    I.      The Videotape from the Patrol Car's Camera Does not Support the Testimony of the State Trooper………………………………  5

    II.     What the Anonymous Caller Witnessed was Never Corroborated by the State Trooper…………………………………………….  13

    III.   The Anonymous Caller Failed to Give a Detail Description..  17

Statement of Facts…………………………………………………………….  2

Statement of Argument……………………………………………………..  5

Argument…………………………………………………………………….  5

    A.  Standard of Review…………………………………………………..  5
    B.  Trial Court Findings…………………………………………………  7

Conclusion and Prayer………………………………………………………… 19

Certification of Compliance …………………………………………………... 20

Certificate of Service………………………………………………………… 21

# INDEX OF AUTHORITIES

## SUPREME COURT

*Alabama v. White,*
     496 U.S. 325, 329; 110 S.Ct. 2410, 110; L.Ed2d 301 (1990)…………….13

*Florida v. J.L.,*
     529 U.S. 266, 120 S.Ct. 1378; 146 L.Ed.2d 254-261 (2000)……………..14

*Henry v. United States,*
     361 U.S. 98; 80 S.Ct. 168, 171; 4 L.Ed.2d 134 (1959)……………………..6

*Terry v. Ohio*,
     392 U.S. 1, 22; 88 S.Ct. 1868; 20 L.ed.2d 889 (9168)……………………..6

## TEXAS COURT OF CRIMINAL APPEALS

*State v. Ballard*,
     987 S.W.2d 889, 891 (Tex. Crim. App. 1999)…………………….…..…...6

*Brother v. State*,
     166 S.W.3d 255, 257 (Tex. Crim. App. 2005)…………………...…….17

*Carmouche v. State*,
     10 S.W.3d 323, 328 (Tex. Crim. App. 2000)…. ………………….6,9,10,12

*Guzman v. State*,
     955 S.W.2d 85, 89 (Tex. Crim. App. 1997)……………………….6,7,9,10

*Johnson v. State,*
     68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002)…………………….....6,7

*Montanez v. State,*
     195 S.W.3d 101, 109 (Tex. Crim. App. 2006)……………………….7

*Romero v. State,*
     800 S.W.2d 539, 543 (Tex. Crim. App. 1990)…………………….6

*State v. Ross,*
      32 S.W.3d 853, 855 (Tex. Crim. App. 2000)………………...................6

*State v. Weaver*
      349 S.W.3d 521, 525 (Tex. Crim. App. 2011)……………………………7

*State v. Woodard,*
      341 S.W.3d 404, 410 (Tex. Crim. App. 2011)……………….…..………..7

## TEXAS COURTS OF APPEAL

*Best v. State,*
      118 S.W.3d 856, 861 (Tex. App. –Fort Worth, *no pet.*)………..………....6

*Davis v. State,*
      989 S.W.2d 859, 863(Tex. App. –Austin 1999, *pet. ref.* )……………13,15

*State v. Fudge,*
      42 S.W.3d 226, 230 (Tex. App. –Austin 2001, *no pet.*)………..……...16

*Harrison v. State,*
      144 S.W.3d 82, 85 (Tex. App. –Fort Worth 2000,*pet. granted*)…………..6

*Hawes v. State,*
      125 S.W.3d 535, 538-39 (Tex. App. –Houston [1st Dist.] 2002, *no pet.*)...16

*State v. Houghton,*
      384 S.W.3d 441, 448 (Tex. App. –Fort Worth 2012, *no pet.*)………........12

*Reesing v. State,*
      140 S.W.3d 732, 737 (Tex. App. –Austin 2004, *pet. ref'd*)………………18

*State v .Salilo,*
      910 S.W.2d 184, 188-89 (Tex. App. –Fort Worth 1995, p*et. ref'd*)…16,17

## CONSTITUTIONAL PROVISIONS

U.S.CONST. AMEND. IV……………………………………….…………………5

## <u>WESTLAW</u>

*State v. Palmer,*
        2005 WL 555281, 3-4 (2005)……………………………………………11

**NO. 12-15-00128-CR**

---

IN THE TWELFTH COURT OF APPEALS
TYLER, TEXAS

---

**ROBERT LAFAYETTE WALKER**

**Appellant**

**v.**

**THE STATE OF TEXAS**

**Appellee**

---

On Appeal from the County Court at Law Number Three of Smith County,
Texas
Trial Cause No. 003-82609-14

---

**TO THE HONORABLE JUSTICES OF THE COURT:**

COMES NOW, Robert Lafayette Walker, by and through his attorney of record, Beverly D. Melontree, and files his brief pursuant to the TEXAS RULES OF APPELLATE PROCEDURE, and would show the Court as follows:

## STATEMENT OF THE CASE

This is a motion to suppress case for driving while intoxicated – 2nd offense. Mark Lafayette Walker (hereinafter referred to as "Mr. Walker") appeals the denial of the motion to suppress and conviction for the offense. Mr. Walker was charged with the above-mentioned misdemeanor offense on July 3, 2014 (CR 1). After the Court denied (CR 55) Mr. Walker's motion to suppress (CR 41-54), Mr. Walker plead "guilty" and was sentenced to serve 200 days in the Smith County jail. (CR 77).  Notice of Appeal was timely filed. (CR 82-83).

## ISSUES PRESENTED

**I.  THE VIDEOTAPE FROM THE PATROL CAR'S CAMERA DOES NOT SUPPORT THE TESTIMONY OF THE STATE TROOPER.**

**II.  WHAT THE ANONYMOUS CALLER WITNESSED WAS NEVER CORROBORATED BY THE STATE TROOPER**

**III.  THE ANONYMOUS CALLER FAILED TO GIVE A DETAIL DESCRIPTION.**

## STATEMENT OF FACTS

On July 3, 2015, Mr. Walker was traveling his truck on the public streets of Tyler, Texas in Smith County. According to the testimony of the state trooper and the evidence presented at the hearing, an anonymous caller called the Sheriff's Office Communications Center. He reported that he was witnessing a drunk driver (RR p. 7, lines 6-7; RR p. 8, lines 1-17). Unbeknownst to the anonymous caller, he had called the wrong dispatch; and therefore, his call was

transferred to DPS 911. However, when the anonymous caller was transferred to DPS 911, the anonymous caller was only able to state the following: "I want to report a drunk driver." (RR p. 8, lines 15-18). The DPS operator asked the anonymous caller the location, and afterwards the call was disconnected.

At the Motion to Suppress hearing, the state prosecutor informed the trial court that the DPS 911 call did not transfer. (RR p. 8, lines 20-25). (*See State's Exhibit No. 1*). He further stated on the record, that the State was unable to produce the DPS 911 call (RR p. 8, lines 19-25; p. 18, lines 20-22; p. 11, line 16; p. 20, lines 1-25).

As the hearing continued, the state trooper further testified that when he received the call in regards to a "drunk driver" driving recklessly, he was in the immediate area. (RR p. 12, lines 1-8). The state trooper turned his patrol cruiser around to pursue the "drunk driver" on Cumberland Road. (RR p. 12, lines 14-16).

While in hot pursuit of the alleged drunk/reckless driver, the state trooper further testified that the vehicle in front of him was the 911 caller; and therefore, he flashed his lights and went around the 911 caller to pursue Mr. Walker in his truck. (RR. p. 11, lines 14-25; *See State's Exhibit No. 2*). Shortly thereafter, the state trooper initiated a traffic stop on Mr. Walker because according to his testimony, he witnessed Mr. Walker's truck cross the double-yellow line. He

also testified that after he witnessed the alleged traffic violation, he had probable cause and reasonable suspicion to initiate the stop and not on the reliance of the DPS 911 call. (RR p. 13, lines 1-25; p. 14, lines 1-3; p. 15, lines 21-25; p. 16, lines 5-25; p. 17, lines 8-9; lines 20-25; p. 22, lines 2-25; p. 23, lines 1-15).

During the hearing, the state trooper was unable to show defense counsel, on the videotape, where Mr. Walker's truck actually crossed the double-yellow line. He testified that he documented the traffic violation in his case report and without a doubt, had witnessed Mr. Walker commit the traffic violation. (RR p. 23, lines 16-25; p. 24, lines 1-4). After the trooper finished his testimony, both parties rested and gave final arguments.

Defense counsel argued to the trial court the failure of the videotape not corroborating the state trooper's testimony in regards to Mr. Walker's vehicle crossing the double-yellow line.  Also, defense counsel argued the State's failure to present the DPS 911 tape. However, the trial court informed defense counsel that there was no case law stating that the state trooper's testimony had to be corroborated by the video, if one was present. (RR p. 29, lines 13-18; p. 30, lines 14-19; p. 31, lines 19-25; p. 31, lines 1-15). As for the traffic violation, the state prosecutor concurred with defense counsel. The state prosecutor argued that it was *"his belief"* that according to the videotape, it appeared to him that Mr. Walker's truck was at least on the double-yellow line. (RR p. 33, lines 9-13).

4

From the state prosecutor's own argument, it was quite obvious that Mr. Walker's truck's wheel touched the double-yellow line, but did not cross it.

Despite the fact the trial court denied Mr. Walker's Motion to Suppress, (CR 55) and Mr. Walker was sentenced to 200 days confinement in the Smith County jail. (CR 77). This appeal follows. (CR 82-83).

## STATEMENT OF ARGUMENT

<u>Issue One</u>:  Recent case law has held that if the videotape presents indisputable visual evidence contradicting essential portions of an officer's testimony, then the courts will forego the "credibility and demeanor" of the witness. The Appellate courts will review de novo; the trial court's rulings on mixed questions of law and fact.

<u>Issue Two</u>:  A tip from an anonymous caller standing alone, rarely supplies reasonable suspicion for a stop because it lacks "sufficient indicia of reliability"

## ARGUMENT

**I. <u>THE VIDEOTAPE FROM THE PATROL CRUISER'S CAMERA DOES NOT SUPPORT THE TESTIMONY OF THE STATE TROOPER.</u>**

A. <u>Standard of Review</u>.

The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. amend IV. For an arrest to be justified under the Fourth Amendment, it must be accompanied by probable cause to believe that a person

has engaged in or is engaging in criminal activity. *Henry v. United States,* 361 U.S. 98, 80 S.Ct. 168, 171, 4 L.Ed. 2d 134 (1959). A detention, however, may be justified on less than probable cause if a person is reasonably suspected of criminal activity based on specific articulable facts. *Terry v. Ohio,* 392 U.S. 1, 22 , 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Carmouche v. State,* 10 S.W.3d 323, 328 (Tex. Crim. App. 2000).

Appellate courts review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Carmouche,* 10 S.W.3d at 327; *Guzman v. State,* 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision, the appellate courts do not engage in their own factual review. *Romero v. State,* 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App. –Fort Worth 2003, *no pet.*). The judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *State v. Ross,* 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); *State v. Ballard,* 987 S.W.2d 889, 891 (Tex. Crim. App. 1999). The appellate courts give almost total deference to the trial court's rulings on (1) question of historical fact and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Johnson v. State,* 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002); *Harrison v. State,* 144 S.W.3d 82, 85 (Tex. App. –Fort Worth 2004, *pet. granted*); *Best,*118 S.W.3d at 861-862. Therefore,

when the trial court's rulings do not turn on the credibility and demeanor of the witnesses, then the appellate courts will review de novo at trial court's rulings on mixed questions of law and fact. *Johnson,* 68 S.W.3d at 652-53.

Appellate courts also afford almost total deference to the trial judge's determination of facts (if those facts are supported by the record) when they review a suppression ruling. *State v. Weaver,* 349 S.W.3d 521, 525 (Tex. Crim. App. 2011); *State v. Woodard,* 341 S.W.3d 404, 410 (Tex. Crim. App. 2011); *Guzman v. State,* 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). That same deferential standard of review "applies to a trial court's determination of historical facts (even) when that determination is based on a videotape recording admitted into evidence at the suppression hearing". *Montanez v. State,* 195 S.W.3d 101, 109 (Tex. Crim. App. 2006).

B. <u>Trial Court Findings</u>.

At the end of the hearing, defense counsel requested that the trial court prepare the findings of facts and conclusion of law. However, defense counsel failed to timely file the motion as instructed by the trial court. (RR p. 34, lines 20-25; RR p. 35, lines 1-4). Nevertheless, in defense counsel's closing argument, the trial judge actually gave his facts and conclusion of law (RR p. 30, lines 14-25; p. 31, lines 1-25; p. 32, p. 32, lines 1-16); and therefore, defense

counsel respectfully request that this Court consider the judge's statements as his finding of facts and conclusion of law.

In our case, it depends upon a single fact and not any legal issue: "Did the state trooper actually see a traffic violation before he detained Mr. Walker? During the state trooper's cross examination with defense counsel, he was unable to point on the videotape where Mr. Walker actually committed the traffic violation (crossing over the double yellow-line) to initiate the stop. He testified as follows: (RR p. 23, lines 16-25; RR p. 24, lines 1-4):

**Melontree:** Where on there did he cross the yellow line? I'm trying to see it. Show me.

**Trooper:** He crosses the yellow line. It's in my case report.

**Melontree:** So where is it on the video?

**Trooper:** It's in the video prior to me going around the vehicle?

**Melontree:** We don't see it, do we?

**Trooper:** I can't help that the camera is posted over—is stationed over my passenger seat and it's zoomed way out. So I can't, while I'm driving down the road, make sure the camera captures everything while I'm trying to stop people that are crossing yellow lines.

Likewise, the Court too concurred with the state trooper in regards to the videotape not capturing the alleged traffic violation and stated the following:

**The Court:** Let me ask you this: Are you saying that a hundred percent of what the officer observed has to be reflected on the video?

**Melontree:** I think so.

**The Court:** I don't think there's any cases that say that.

Thus, most recent case law disagrees with the trial court's statement. In *Carmouche v. State*, 10 S.W.3d 323 (Tex. Crim. App. 2000) the arresting officer (Ranger Williams) testified that Appellant consented to the search of his person. However, Appellant maintained that he made no gestures that could be construed as an indication of consent. Appellant also argued that even if the Court found some action on his part that might be taken as affirmative consent, that consent was not given voluntarily, but was instead a submission to an overwhelming display of police authority. During the detention of Appellant a video was recording the detention. The Court of Criminal Appeals reviewed the video and concluded that the videotape from the patrol car's camera did not support the testimony of Ranger Williams. Specifically, the critical seconds of the tape surrounding the time of Appellant's consent showed a different sequence of events than what Ranger Williams described at trial.

The tape did not support a conclusion that Appellant made gestures as an indication of consent. The court wrote the following: "*Guzman* states that, 'as a general rule, the appellate courts, including this Court, should give almost total deference to a trial court's determination of the historical facts that the record supports especially when the trial court's findings are based on an evaluation of

credibility and demeanor. *Guzman,* 955 S.W.2d at 89. In the unique circumstances of this case, however, we decline to give '*almost total deference'* to the trial court's implicit findings under which the Court of Appeals found consent. First, we note that the trial court seems to have predicated its decision to admit the evidence on a finding of probable cause rather than on consent. Second, the nature of the evidence presented in the videotape does not pivot **'on an evaluation of credibility and demeanor'**. Rather the videotape presents indisputable visual evidence contradicting essential portions of Ranger Williams' testimony. In these narrow circumstances, we cannot blind ourselves to the videotape evidence simply because Ranger Williams' testimony may, by itself, be read to support the Court of Appeals' holding."

The Court further held that the record did not support the Court of Appeals' finding of clear and convincing evidence that Appellant's consent, if given at all, was free and voluntary." The videotape presented indisputable visual evidence and did not pivot on "an evaluation of credibility and demeanor." Likewise, defense counsel argued to the trial court that the state trooper's testimony was not corroborated by the videotape. As previously stated, the Court objected to the argument and stated the following: "Under case law, you don't." (RR p. 30, lines 14-19). However, his statement was wrong in accordance with *Carmouche*. Clearly, the state trooper was unable to show to

defense counsel on the videotape where Mr. Walker committed the alleged traffic violation, but referred defense counsel to his case report, instead of the videotape. (RR p. 23, lines 16-25; p. 24, lines 1-4). Therefore, we respectfully request this Court to reverse the decision.

Furthermore, in *State v. Palmer*, 2005 WL 555281, 3-4 (2005), the police was the only witness at Appellee's motion to suppress hearing. He testified that Appellee had committed a traffic violation. Besides just focusing on the credibility and demeanor of the officer, the court viewed the videotape to see if Appellee had committed a traffic violation per the officer's testimony. Although the trial court did not make written findings of fact or conclusion of law, it stated on the record that appellee's conduct did not constitute a traffic violation. After the Court viewed the videotape a second time to get a closer look at the alleged traffic violation, the court stated the following: "I just don't see any violations to this, so I am going to grant the motion to suppress."

It is defense counsel's argument, along with Mr. Walker that like the above-mentioned cases, the trial court did not have to rely solely on the state trooper's testimony. The trial court could have also relied on the videotape. Clearly, the videotape did not corroborate the state trooper's testimony. There is indisputable visual evidence.

Additionally, in *State v. Houghton,* 384 S.W.3d 441, 448 (Tex. App. –Fort Worth 2012, *no pet.*), the arresting officer testified that Appellant crossed the double-yellow line. When the court reviewed the video recording, the judge stated that the left-side tires of Houghton's vehicle briefly touched but did not cross the double-yellow line. And, the State presented no evidence at the suppression hearing that this maneuver was performed in an unsafe manner. The court held that the video recording likewise did not "indisputably" show that Houghton's vehicle failed to maintain a single lane in an unsafe manner, unlike the video in *Carmouche*, in which the court of criminal appeals declined to defer to the trial court's determination of historical facts where "indisputable visual evidence" shown in the video contradicted the officer's testimony.

This issue is raise in regards to the touching of the double-yellow line because the state prosecutor in our case argued the following (RR p. 33, lines 9-13):

**Mr. Dewitt**: I believe even in the video, we can see the vehicle has driven at least onto those yellow lines, and that's in that dividing space which would initiate validate --- a sufficient traffic stop here.

In accordance with *Houghton*, the state trooper had no reasonable suspicion or probable cause to stop Mr. Walker as he drove down Cumberland Road in Smith County, Texas; because no traffic violation had been committed by Mr. Walker. As stated earlier, the state prosecutor too argued that from the videotape, he

never saw Mr. Walker's truck cross the double-yellow line. There is indisputable visual evidence shown in the video that contradicts the officer's testimony. We respectfully request that the trial court's decision be reversed by this Court.

Arguably, the state trooper pursued Mr. Walker from the DPS 911 call and not because of the alleged traffic violation.

## II. <u>WHAT THE ANONYMOUS CALLER WITNESSED WAS NEVER CORROBORATED BY THE STATE TROOPER.</u>

While an anonymous tip or telephone call may justify the initiation of an investigation, it alone will rarely establish the level of suspicion required to justify a detention. *Alabama v. White,* 496 U. S. 325, 329, 110 S. Ct. 2412, 110 L. Ed.2d 301 (1990); *Davis v. State,* 989 S.W.2d 859, 863 (Tex. App. –Austin 1999, *pet. ref'd*). Normally, a police officer must have additional facts before the officer may reasonably conclude that the tip is reliable and an investigatory detention is justified. *See Davis v. State,* 989 S.W.2d at 863.

An officer's prior knowledge and experience and his corroboration of the details of the tip, may be considered in giving the anonymous tip the weight it deserves. *See id* at 864. But the corroboration of details that are easily obtainable at the time the information is provided, and which do not indicate criminal activity, will not lend support to the tip. *See Id.* As the United States Supreme Court has recently written: "An accurate description of a subject's

13

readily observable location and appearance is of course reliable in this limited sense: It will help the police correctly identify the person whom the tipster means to accuse. Such a tip, however, does not show that the tipster has knowledge of concealed criminal activity. The reasonable suspicion here is at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person." *Florida v. J.L.,* 529 U.S. 266, 120 S. Ct. 1375, 146 L.Ed.2d 254, 261 (2000).

Likewise, in our case-in-chief, the anonymous caller gave no identification of the vehicle that was supposedly driving recklessly on the highway. Furthermore, when the state trooper observed Mr. Walker in his truck, the state trooper did not witness any reckless driving. The only thing that the state trooper allegedly witnessed, according to his case report, was Mr. Walker allegedly crossing the double-yellow line into opposing traffic. Thus, according to the videotape, it does not show that Mr. Walker had committed a traffic violation to justify the traffic stop.

The state trooper witnessed no other traffic violation to corroborate the anonymous tip and only acted solely on the basis of what he had allegedly received from dispatch. Furthermore, the anonymous caller did not identify himself/herself. The anonymous caller did not stop at the scene, or otherwise come forward. Clearly, the anonymous tip did not justify the initiation of an

investigation. For example, in *Davis* a police officer was informed that a caller had reported that a particularly described vehicle was being driven northbound on Interstate 35 at a specified location; that it was occupied by three males; that the vehicle was being driven recklessly; and that the occupants were possibly smoking marihuana. *See* 989 S.W.2d at 861. The officer positioned himself to intercept the suspect vehicle and stopped it. The officer witnessed no offense and acknowledged that he acted solely on the basis of the tip.

The caller did not identify himself, stop at the scene, or otherwise come forward. The Court held that the "anonymous tip, uncorroborated as to the significant aspects by independent police work, did not exhibit sufficient indicia of reliability to justify the investigative stop." *Id* at 865. Like *Davis,* the State has failed to present the 911 tape that was made to DPS and supposedly relayed to the trooper. (RR p. 20, lines 1-17) The only thing that the State had to rely on was the state trooper's testimony, along with the trial court. However, the state trooper's testimony failed to corroborate the videotape in regards to the stop, along with the DPS 911 caller.

Also, the state trooper had the opportunity to seek out the DPS 911 caller, but failed to do it. For instance, he testified that after he has stopped Mr. Walker's truck, the DPS 911 caller stopped behind them. (RR p. 12, lines 5-8; p. 14, lines 17-25; p. 15, lines 19-25; p. 16, lines 1-14; p. 17, lines 10-23; p. 18,

15

lines 14-16, lines 20-22; p. 20, lines 11-17; p. 22, lines 2-25). However, the state trooper never approached the DPS 911 caller nor did the anonymous caller approach the state trooper to give his information and what he witnessed to justify the investigative stop.

Moreover, courts traditionally distinguish between anonymous informants that call 911 verses those that tell an officer the tip face-to-face manner. *State v. Fudge,* 42 S.W.3d 226, 230 (Tex. App. –Austin 2001, *no pet*.). A person, not connected with the police, "who gives a police officer unsolicited information in a face-to-face manner is *inherently* reliable." The citizen's providing information directly to an officer in person, makes the information significantly more reliable than a simple anonymous telephone call. *Hawes v. State,* 125 S.W.3d 535, 538-39 (Tex. App. –Houston [1st Dist.] 2002, no. pet.); *State v. Salilo,* 910 S.W.2d 184, 188-89 (Tex. App. –Fort Worth 1995, *pet. ref'd*).

There is something in the record that should cause this Court to doubt the reliability of the anonymous caller. For instance, the anonymous caller never came forward to give the officer unsolicited information in a face-to-face manner. Nor did the state trooper attempt to approach the 911 caller when it was stopped behind him on the traffic stop of Mr. Walker's truck. (RR p. 18, lines 14-15; p. 15, lines 19-25; p. 16, lines 1-9; p. 17, lines 12-25; p. 18, lines 14-15). The videotape does not corroborate the state trooper's testimony and the state

trooper acted solely on the DPS 911 call. We respectfully request this Court to reverse the trial court's decision.

Furthermore, the Court held in *Salilo* that a person presenting oneself to a police officer, and doing so while driving a car from which an identity might easily be traced, is in a better position to be held accountable for the intervention unlike a person who makes an anonymous telephone call. Clearly, the State never presented any evidence through its one witness to make the DPS 911 call reliable. Ultimately, the state trooper responded because of the DPS 911 call and stopped Mr. Walker's truck; on the DPS 911 call and not the alleged traffic violation.

## III. THE ANONYMOUS CALLER FAILED TO GIVE A DETAIL DESCRIPTION.

Also, the alleged 911 anonymous tipster failed to give a detail description of Mr. Walker's driving behavior; it was conclusory. For instance, in *Brother v. State,* 166 S.W.3d 255, 257 (Tex. Crim. App. 2005), the defendant's erratic driving was reported by a citizen who called 911 on her cell phone after she witnessed the defendant speeding, tailgating, and weaving across several lanes of traffic. The citizen continued to follow the defendant and monitored his driving, while remaining in contact with the 911 operator until the defendant was stopped by a police officer. Afterwards, the citizen remained at the scene of the stop and provided the officer with her contact information. Although the

17

officer did not personally witness a traffic violation, the court of criminal appeals affirmed the court of appeals' judgment that under the totality of the circumstances, the stop was reasonable under the Fourth Amendment. *Id.* At 259-60.

Furthermore, in *Reesing v. State,* 140 S.W.3d 732, 737 (Tex. App. –Austin 2004, *pet. ref'd*), an identified caller to 911 reported seeing the defendant, who displayed signs of intoxication in the caller's presence, driving away from a store. The caller provided a description of the defendant and his car and followed him in his own vehicle, reporting the defendant's location and describing his erratic driving. The defendant was stopped by a police officer acting on the basis of the information supplied by the caller and who did not personally see the defendant commit an offense. *Id.* at 735. The Court held that under the totality of the circumstances, the officer had a reasonable basis for suspecting that the defendant was driving while intoxicated and to stop him for further investigation.

As previously stated, the state trooper did not have a reasonable basis for suspecting that Mr. Walker was driving while intoxicated. For instance, the State never provided the DPS 911 call to confirm the state trooper's testimony. And even without the DPS 911 tape, the state trooper was unable to show where Mr. Walker had committed a traffic violation in his presence. (RR p. 23, lines 16-25;

p. 24, lines 1-4). Additionally, the state trooper could not recall pertinent issues regarding Mr. Walker's driving behavior. (RR p. 20, lines 4-10). The state trooper's stop was not justified in accordance with the above-mentioned case law to further the investigation. Clearly, the evidence is indisputable in regards to the videotape and the state trooper's testimony. Therefore, we respectfully requests that this Court reverse the trial court's decision.

## CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, counsel respectfully prays that the Court hold that the trial court erred by denying Appellant's Motion to Suppress and render a judgment of acquittal.

Respectfully submitted,

By: _____

Beverly D. Melontree
State Bar Number: 13922100
213 S. Fenton Avenue
Tyler, Texas 75702
Telephone: 713-480-2674
Facsimile: 903-747-3760
bmelontree@icloud.com

# CERTIFICATE OF COMPLIANCE

STATE OF TEXAS      §
            §
COUNTY OF SMITH     §

"The word count for Appellant's Brief is less than the 15,000 word count in accordance with the Appellate Rules 9.4 (2)(B) and 9.4 (3) and that the facts stated in it are within her personal knowledge and are true and correct."

_____
BEVERLY D. MELONTREE

## CERTIFICATE OF SERVICE

I do hereby certify that on Sunday, August 16, 2015, a true and correct copy of the Appellant's Brief has been forwarded by efiling to the following counsel:

Mr. Michael J. West
Assistant Criminal District Attorney
Smith County District Attorney's Office
100 North Broadway Avenue, 4th Floor
Tyler, Texas  75702

_____
Beverly D. Melontree